### TANCO *v.* BOOTH *et al.*

*(Common Pleas of New York City and County, General Term. June 1, 1891.)*

**1.** REPLEVIN—RIGHT TO MAINTAIN—AUTHORITY OF AGENT.
    L., residing in Cuba, requested T., in New York, to purchase certain goods for him, and deliver them to R., to be carried by him as a steam-ship passenger to Cuba. T. purchased the goods, and delivered them to R., who had them sent on board defendants' ship. Afterwards R. decided not to go to Cuba, and demanded possession of the trunk containing such goods from defendants, who refused to deliver them up. R. then delivered the key of the trunk to T., and, on defendants' refusal to deliver the trunk to him, instituted an action to recover the same. *Held*, that it was not necessary to show any authority in R. to deliver the trunk to T., who had a right to resume possession thereof in order to effect its delivery to his correspondent, and that his title to the goods was sufficient to entitle him to maintain an action for their recovery.

**2.** CARRIERS—PASSENGER'S EFFECTS—CONFISCATION—REVENUE LAWS.
    Where a passenger takes merchandise in his trunk on board of a steamer bound for a foreign port, to be carried as baggage, and no fraud or concealment is attempted, the steam-ship company cannot confiscate such property, though carried on board of their vessel in violation of its rules, and supposed by it to have been an attempt to violate the United States laws respecting the manifest of cargo.

**3.** REPLEVIN—PRACTICE—LIABILITY OF DEFENDANT.
    Defendants, acting ostensibly as agents for a steam-ship passenger line, but who were in fact general partners in a firm operating the line, were properly held liable in replevin to recover possession of baggage delivered to them for carriage to a foreign port.

Appeal from city court, general term.

Action by Jose Tanco, Jr., against Henry P. Booth and William P. Hughes, impleaded with others, to recover possession of personal property. Judgment of trial term of city court in favor of plaintiff was affirmed without opinion by the general term, and defendants again appeal.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Carter & Ledyard,* (*Geo. H. Balkam,* of counsel,) for appellants.    *Edward D. McCarthy,* for respondent.

DALY, C. J.    In the month of November, 1888, the plaintiff, who resided in the city of New York, received a letter from one Llata, then in Cuba, requesting him to purchase certain goods, namely, pistols, jewelry, etc., and to deliver them to one Repko, in this city, to be by him taken to Cuba, agreeing to repay the plaintiff the sum paid by him for said goods and 5 per cent. commission for his services. The plaintiff purchased the goods, paying therefor $400; notified Repko, and, pursuant to the latter's instruction, sent them to his house in this city. Repko packed the goods in his trunk with his baggage, and on December 1, 1888, sent them to the steam-ship pier at which the steam-ship Niagara was lying, bound for Havana; he intending to take passage on said steamer, and to take the trunk with him. Before the sailing of the steamer, Repko changed his mind about sailing, and demanded his trunk, but it was refused. The refusal was by the defendants Booth and Hughes, who were operating the line of steamers between New York and Havana, to which the Niagara belonged, as agents for the New York & Cuba Mail Steam-Ship Company, a domestic corporation, which was the owner of the said steamers, and engaged in the business of carrying freight and passengers between said ports. Upon the refusal of the defendants to return the trunk to Repko, he informed the plaintiff of the facts, delivered to him the key of the trunk, and told him that he should go and get it, as he, Repko, could not get it back. The plaintiff then demanded the trunk from the defendants, and, upon their refusal to deliver it, brought this action, claiming the trunk and contents as his property. Having obtained them by proceedings of claim and delivery in the action, plaintiff subsequently shipped them to Llata, in Cuba, and received from him the sum he had expended in their purchase.

The first contention upon this appeal is that this action cannot be maintained, because Llata, and not the plaintiff, was the owner of the goods at the time of his demand and the commencement of this action; that in the purchase and shipment of the goods plaintiff acted as agent of Llata; that, if he had a lien for the purchase price, he had lost it by delivering the goods to Repko; and that, even if he stood originally in the attitude of vendor to Llata, yet when, pursuant to the direction of the vendee, he delivered the goods to Repko, Llata's agent, the title passed from him to the purchaser; and that, if his title is based upon the redelivery to him by Repko, there is no proof of authority from Llata for such redelivery; that such redelivery would not revest the title in the plaintiff; that the delivery of the key of the trunk was not equivalent to the delivery of the goods, and, if it were, there was no intention on the part of Repko by that act to confer ownership of the goods upon the plaintiff, but only an intention to use the plaintiff's efforts in order to regain them himself. All the circumstances concur in establishing that Repko's intention was to surrender the goods back to the plaintiff, in order that he might make delivery of them as best he could, and to that end the key of the trunk was given. The object which Llata originally had in view in having the goods intrusted to Repko was that the latter should bring them with him to Cuba, and, when this mode of transportation became ineffectual, because Repko concluded not to sail, and could not regain possession of the trunk, the responsibility was thrown upon the plaintiff to find some other way of making delivery of the goods he had purchased. It was plainly to effect this purpose that Repko notified the plaintiff of what had occurred, and gave up the key of the trunk. This act of Repko's revested plaintiff with all the rights over and property in the goods which he originally possessed, the same as if Repko had refused to receive the goods in the first instance. No particular form of transfer was required for the purpose. The delivery of the key and authority to demand the trunk was sufficient. It was not nec-

essary to show authority in Repko to deliver the goods back to the plaintiff. If he chose to abandon the voluntary duty of transporting them to Llata the plaintiff had the right to resume possession in order to deliver them himself; for this was necessary in order to carry out the instructions of his correspondent. It is contended, however, that, even if the plaintiff, by Repko's redelivery, was placed in the same position he originally occupied, he was not the owner of the goods, and could not, therefore, maintain this action. As plaintiff had bought and paid for the goods, he was the owner against all the world save Llata, and his right and possession were sufficient to maintain the action. The plaintiff does not claim by virtue of a lien, and is not, therefore, concluded by the fact of the delivery to Repko, nor by the allegation of ownership in the complaint.

There remain two objections to the plaintiff's recovery to be considered. The first is that the shipping of the goods in the trunk as baggage was an attempt to violate the laws of the United States respecting the manifest of cargo, and to defraud the steam-ship company of its freight, to which unlawful attempts plaintiff, it is claimed, was privy. The second is that the goods, when demanded by the plaintiff, were in the custody of the New York & Cuba Steam-Ship Company, and the action cannot be maintained against Booth and Hughes, who were merely agents. The only evidence that the plaintiff was privy to any unlawful design on the part of Repko or Llata is his admission that he knew that Repko was going to carry the goods as his personal baggage, and that he supposed, "if they went as baggage, no freight was to be paid upon them." The defendants argue from this a design to assist in smuggling the goods into Cuba. Nothing of the kind is established. The facts do not show that any concealment was attempted. The baggage of passengers is subject to examination, like packages of merchandise; and there is nothing to distinguish this case from the common practice of passengers to and from foreign ports who, for greater security, take personal charge of particular articles of merchandise, where the rules of the steam-ship companies do not forbid. If any rule of this steam-ship company was violated, it did not give the company the right to confiscate the property. The only authority cited by appellants for such an extreme measure is that of *Cantlon* v. *Alexandre*,[1] where we affirmed a judgment in favor of defendant, rendered in a district court, it appearing that goods were clandestinely intrusted to the steward of the steam-ship company to be smuggled. Nothing in the case before us warrants the application of the doctrine on which that decision was based, viz., that the law will not extend its aid to relieve a party from the consequences of such an unlawful scheme. As to the charge of an attempt to defraud the steam-ship company of its freight, the plaintiff's testimony is simply that, "if the goods went as baggage,"—*i. e.*, if permitted by the steam-ship company to go as baggage,—he supposed no freight would be demanded. The defendants are personally liable for their refusal to deliver the goods upon the plaintiff's demand. They received the trunk in the course of their business, which was operating the line of steamers in question. They are the general partners in the firm of James E. Ward & Co.; and, while they call themselves agents for the company, they were evidently independent contractors and principals, not servants acting for a master. It was not like *McDougall* v. *Travis*, 24 Hun, 590, which was an action against the freight agent of a railroad company, who was merely the servant of the company in whose possession the goods had lawfully come. The argument of the court in that case is that, if one were in possession of the furniture in one's own house, a person claiming it could not maintain replevin against the servant who refused to deliver it on demand. There is no question of the entire propriety of that decision, but it is not applicable to the facts of this case. The judgment appealed from should be affirmed, with costs. All concur.

[1] Not reported. No opinion was written.